IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF MISSOURI
WESTERN DIVISION

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | Case No. 16-00265-01-CR-W-BCW |
| v. | ) | |
| | ) | |
| JASON PINK, | ) | |
| | ) | |
| Defendant. | ) | |

**DEFENDANT'S SENTENCING MEMORANDUM**

COMES NOW the defendant, Jason Pink, by and through counsel, and offers the following Sentencing Memorandum in aid of his request for a sentence of five years of probation with the standard and special conditions set out in the PSR at ¶ 70. A probationary term is warranted based primarily on the unique medical condition and needs of Mr. Pink. The defendant appreciates the discretion shown by the government in its agreement to jointly recommend a sentence of probation. The parties have attempted to weigh the competing criteria of the sentencing guidelines and 18 U.S.C. § 3553(a), including the medical needs of the defendant. In this particular case, a sentence of probation is sufficient but not greater than necessary to achieve the goals of sentencing.

**I.      INTRODUCTION**

On August 24, 2016, Mr. Pink pled guilty to a single count of possession of child pornography in violation of 18 U.S.C. § 2252(a)(4). Through his plea, as well as other steps he has taken, Mr. Pink has accepted full and complete responsibility for his actions and knows that he will live the rest of his life with the consequences.

Mr. Pink has been on pretrial release since he surrendered to authorities on August 24, 2016 and has not violation any condition of release. Mr. Pink's remorse for his actions is palpable. He knows the harm he has caused to his family, loved ones and friends.

The Court has received Mr. Pink's Presentence Report (PSR) and the advisory United States Sentencing Guidelines (USSG) calculations. In the instant case the PSR calculated the total offense level as 20, the criminal history category as I with a guideline range of 33-41 months.

As the Court knows, pursuant to Mr. Pink's plea agreement, the government agreed to jointly recommend a sentence of probation. Mr. Pink respectfully suggests that his physical condition provides a basis for consideration of a downward departure pursuant to USSG § 5H1.4 and a variance under § 3553(a).

Based on these mitigating sentencing factors, Mr. Pink respectfully requests a downward departure and/or variance to a sentence of five years of probation and suggests this would be a fair and reasonable sentence in light of the sentencing objectives set forth in Title 18 U.S.C. § 3553(a)(2).

## II. STANDARDS FOR IMPOSING SENTENCE

In *United States v. Booker*, 543 U.S. 220 (2005), the Supreme Court determined that district courts must consider all of the sentencing factors under 18 U.S.C. §3553(a)(1)-(7) without giving mandatory weight to the Guidelines. Post *Booker*, after determining the Guideline ranges and any permissible departures within the Guidelines structure, the court

must determine whether a non-Guidelines sentence is appropriate. *United States v. Myers,* 503 F.3d 676, 684 (8th Cir. 2007).

Once the Court has calculated the correct guideline range, the Court then has a "responsibility to select a sentence that [is] sufficient, but not greater than necessary to comply with the statutory sentencing purposes." *United States v. Gray,* 577 F.3d 947, 950 (8th Cir. 2009) (quoting 18 U.S.C. § 3553(a)); see also *United States v. Butler,* 594 F.3d 955, 967 (8th Cir. 2010) (same).

As the Supreme Court has long recognized, "it has been uniform and constant in the federal judicial tradition for the sentencing judge to consider every convicted person as an individual and every case as a unique study in the human failings that sometimes mitigate, sometimes magnify, the crime and punishment to ensue." *Koon v. United States*, 518 U.S. 81, 113 (1996). With the United States Sentencing Guidelines now rendered "advisory only," *Kimbrough v. United States*, 128 S. Ct. 558, 564 (2007), a district court has substantial discretion in fashioning a sentence appropriate to the individual circumstances of the defendant and the unique facts of the offense. While the Court must consider the Guideline range in a case, "the Guidelines are not the only consideration." *Gall v. United States*, 128 S. Ct. 586, 597 (2007). See *Kimbrough*, 128 S. Ct. at 564 ("the Guidelines, formerly mandatory, now serve as one factor among several courts must consider in determining an appropriate sentence").

In analyzing a motion for downward variance, a "district court has wide discretion to weigh the factors in each case and assign some factors greater weight than others[.]"

3

Case 4:16-cr-00265-BCW    Document 17    Filed 03/01/17    Page 3 of 14

*United States v. Kane,* 552 F.3d. 748, 755 (8th Cir. 2009). "The district court may not assume that the Guidelines range is reasonable, but instead 'must make an individualized assessment based on the facts presented." *Id. (quoting Gall v. United States,* 128 S.Ct. 586, 597 (2007); *see, e.g., Nelson v. United States,* 129 S.Ct. 890, 892 (2009) ("Our cases do not allow a sentencing court to presume that a sentence within the applicable Guidelines range is reasonable."). "[I]t will be the unusual case when we reverse a district court sentence – whether within, above, or below the applicable Guidelines range – as substantively unreasonable." *quoting United States v. Gardellini*, 545 F.3d 1089, 1090 (D.C. Cir. 2008))." Significant guidance has been given in *United States v. Cole*, 765 F.3d 884 (8th Cir. 2014). A court varied downward to a probationary sentence even though the guideline range was 135 to 168 months. The case was one of the largest corporate frauds in the history of Minnesota, but the court noted, "Cole is not a consummate fraudster, she is not a pathological liar." *See*, 18 U.S.C. § 3553(a)(6). Finally, the district court explained that the probationary sentence would allow Cole to work and earn money to make restitution to the victim of the fraud."

As articulated in 18 U.S.C. § 3553(a), this Court is required to consider the following factors in imposing a reasonable sentence:

(1) the nature and circumstances of the offense and the history and characteristics of the defendant;

(2) the need for the sentence imposed (A) to reflect the seriousness of the offense, to promote respect for the law, and to provide just punishment for the offense; (B) to afford adequate deterrence to criminal conduct; (C) to protect the public from further crimes of the defendant; and (D) to provide

4

the defendant with needed educational or vocational training, medical care, or other correctional treatment in the most effective manner;

(3)  the kinds of sentences available;

(4)  the sentencing Guidelines applicable to the offense; and

(5)  the need to avoid unwarranted sentence disparities among defendants with similar records who have been found guilty of similar conduct; and

(6)  the need to provide restitution to any victim of the offense.

Mr. Pink asserts that application of these factors to the facts of his case demonstrates that a sentence of five years of probation is appropriate.

## III. SENTENCING FACTORS

### A. Nature and Circumstances of the Offense and the History and Characteristics of Jason Pink

#### 1. Circumstances of the Offense

As the PSR recounts, a widespread investigation into others that began in October 2010 ultimately revealed that Mr. Pink possessed child pornography. This revelation occurred in October 2013. Mr. Pink understands the seriousness of this offense, and he has accepted responsibility by his guilty plea and factual basis.

#### 2. Characteristics of Jason Pink

At 45 years of age, Mr. Pink stands before this court with no history of arrests, convictions or juvenile adjudications. Throughout his life, has been a productive member of his community.

Mr. Pink was born in Kansas City, Missouri. Along with his sister, he was raised by his parents, John and Jan Pink. They are a close-knit family. He graduated from Raytown South High School in 1990.

Mr. Pink's conduct is completely at odds with his personality and actions as observed by his family and acquaintances, many of whom have written letters of support for this court's consideration at sentencing. Without exception, all of the letter writers hold Mr. Pink in very high regard, telling a life story of a man who selflessly gives his time and support to many positive activities within his community – as a son, a father, a former teacher, a friend, and a community volunteer. Mr. Pink's life has positively impacted a tremendous number of people in his community.

Mr. Pink married in 1998. He and his wife adopted a daughter in 2004. In 2008, Mr. Pink's wife was diagnosed with colorectal cancer, and she passed away in June 2009. Because of his devastating childhood injury, his marriage was Mr. Pink's first opportunity to experience independence in his own home. The death of his wife thrust him into the role of disabled single parent. Mr. Pink worked, arranged transportation for himself and his daughter, helped with homework and lovingly took care of his daughter as any other single parent would. When this offense was discovered, he willingly agreed to a custody arrangement in which his daughter's maternal grandmother would have sole physical custody. Mr. Pink speaks to his daughter daily on the phone and maintains regular supervised visitation.

There are repeated accounts of Mr. Pink's compassion, love and determination. Mr. Pink's father wrote a letter to the court in which he stated, "The thing I've always admired about Jason is his caring nature and his dogged determination to lead a normal life. He does not complain about his limitations." He went on to say, "Jason has always had a charitable nature. He took very seriously the Boy Scout creed to help the younger and the weaker…Jason also served on the staff of the Rotary Youth Camp at Lake Jacomo…Jason has also made financial gifts each year to Friends of Scouting so that a disadvantaged scout could attend camp."

Mr. Pink's mother wrote, "Jason has always been my nurturing and generously giving child. Scouting was his joy." She described Mr. Pink's acceptance of responsibility and the serious collateral consequences he has had to face for his conduct. Mrs. Pink stated, "I believe Jason will be forever sorry for his mistake. I believe he will turn a seemingly impossible situation around and be a responsible, respectful, loving father and citizen."

A longtime friend wrote, "After Jason's wife passed away, Jason [encouraged and participated in] the Dr. Julie Ball blood drive annually." She went on to inform the court, "Jason has many physical "disabilities" but has never let any of them stand in his way of helping others."

In advance of this sentencing hearing, the court has been presented with these letters of support from friends and family. Even a cursory review of the letters provides the court with a consistent theme –Jason Pink is a loving, caring, compassionate person, willing to

7

assume many responsibilities for the betterment of others – all without fanfare or the expectation of public accolades.

Mr. Pink recognizes the damaging effects that his conduct has had on himself, his loved ones, the victims, and society at large. He enjoys the support and encouragement of friends and family members who both hold him accountable and support his efforts to continue to be an active and productive member of his community. There is little danger that Mr. Pink will ever reoffend.

**B. 18 U.S.C. § 3553(a)(2) – The Need for the Sentence Imposed to Promote Certain Statutory Objectives.**

*1. To Reflect the Seriousness of the Offense, Promote Respect for the Law, and Provide Just Punishment for the offense.*

A lengthy sentence of incarceration is not always necessary in order to satisfy this sentencing mandate. Indeed, as observed by the District Judge in *Gall*, probation (or post-release supervision), "rather than an act of leniency, is a substantial restriction of freedom." *Gall*, 128 S.Ct. at 593. The *Gall* Court emphasized that the defendant would have to "comply with strict reporting conditions along with a [multi]-year regime of alcohol and drug testing." *Id*. The Court also noted that the defendant would "not be able to change or make decisions about significant circumstances in his life, such as where to live or work, which are prized liberty interests, without first seeking authorization from his Probation Officer or, perhaps, even the Court." *Id*. In this case, Mr. Pink will have a lifelong requirement to register as a sex offender and will have to abide by all state and federal requirements associated with registration.

8

As renowned criminologist Norval Morris has consistently argued, and as reflected in recent Supreme Court decisions, when determining punishment, "the least restrictive (punitive) sentence necessary to achieve defined social purposes should be imposed." Norval Morris, <u>The Future of Imprisonment</u>, University of Chicago Press (1974), p. 59.

Mr. Pink concedes that he must be punished for his actions. Mr. Pink will forever have a federal felony conviction on her record, a stigma that has serious consequences.

Given the unique circumstances presented by this defendant, a sentence of probation, will undoubtedly satisfy the statutory objective of providing "just punishment for the offense" to which he pleaded guilty in this case.

> *2. To Afford Adequate Deterrence to Criminal Conduct, and To Protect the Public from Further Crimes of the Defendant.*

Mr. Pink retained the undersigned in May 2014 as a result of the pre-indictment investigation in this matter. Counsel notified the government that Mr. Pink had retained counsel. Nearly two and a half years later, Mr. Pink entered a plea to an information. Throughout the entire pre-indictment period and pretrial supervision, no violation of law occurred, nor did the defendant continue to engage in the conduct set forth in the instant charges. He sought out a psychiatrist and has engaged in cognitive therapies to truly understand what caused him to be drawn to these images. This period of time is a true reflection of Mr. Pink's ability to follow the law and conform his behavior. Mr. Pink's behavior during the pre-charge period should be considered by the court as a sentencing factor. *See U.S. v. Johnson* (588 F. Supp.2d 997 (S.D. Iowa 2008) (in child porn case where guidelines 121-151, court imposes sentence of 84 months in part because "The Court

9

views defendant's behavior during the three-year period between the seizure of his computer and his indictment as a good indication of what society can expect from him after he completes his sentence [and is a factor court considers in imposing sentence].")

For similar reasons, the proposed sentence also satisfies the related statutory objectives of deterrence and protection of the public. The fact that Mr. Pink was investigated, indicted and then pled guilty to a federal felony is a deterrent in and of itself. The lifelong stigma of being a federal felon, along with a five-year probation and lifelong sexual offender registration acts as a deterrent to other similar individuals contemplating this type of fraud.

Further, when examining the life of Jason Pink, including the fact that he has never had a prior arrest or conviction, his ongoing participation in therapy, and his successful adherence to pretrial supervision, leads to the conclusion he is not a danger to the community.

> *3. To Provide the Defendant with Needed Educational or Vocational Training, Medical Care, or other Correctional Treatment in the Most Effective Manner.*

Mr. Pink is 45 years old. He has a bachelor of arts degree in history/education and a master's degree in special education and learning disability. In addition, he has additional credit hours towards a specialist degree. Until the instant offense, he was gainfully employed as a teacher for 16 years. He was terminated as a result of the instant offense. Mr. Pink then became employed in another field; however, upon entry of his guilty plea,

10

he was terminated. Since that time, he has made concerted efforts to find gainful employment. He is not in need of educational or vocational training.

Mr. Pink has numerous, serious physical impairments that form the primary basis for the joint request for probation under a departure and/or variance theory. The letters from Mr. Pink's parents describe what happened to Jason as a child and the effects from the traumatic brain injury he suffered.

At the age of 14, Mr. Pink suffered a traumatic brain injury in a go-kart accident. Mr. Pink suffers from diabetes insipidus, a pituitary gland disorder secondary to this injury. This condition occurs when the body can't regulate how it handles fluids and is not related to diabetes. The treatment is Desmopressin (DDAVP) which is administered by way of refrigerated nasal spray. Mr. Pink must have continuous access to DDAVP to function. He is also on numerous other medications. It is difficult to imagine a scenario in which an inmate might be allowed to carry his own medication on his person. This is significant because the diabetes insipidus can very quickly become serious, and even fatal. Only Mr. Pink knows when his body is ridding itself of fluids and can administer the nasal spray. If he is not allowed access and full control of this medication, how could a nasal spray be administered if he suffers from seizure or unconsciousness? In addition to the diabetes insipidus, Mr. Pink is also completely blind in the left eye, and he has a small field of vision in the right eye. He has no peripheral vision. He has no sense of smell and suffers from frequent migraines and hypertension. These additional conditions, in particular the blindness, would make him very vulnerable to harm in a typical federal prison setting.

In addition to living with the above-described conditions secondary to the traumatic brain injury, Mr. Pink has several ongoing medical concerns that must be addressed. As set out in the PSR at ¶ 49, Mr. Pink underwent surgery to treat a sinus infection related to his reconstructed forehead. Mr. Pink has recently been seen in follow-up and has been informed that the infection is in the bone and will not respond to antibiotics. This will require a major surgery in which the infected bone will be removed and replaced with grafts that have blood supply. A neuro ophthalmologist will also be involved in this surgery as the only optic nerve Mr. Pink has remaining is perilously close to the infected bone. There is a risk that this surgery will result in complete blindness.

In some cases, even those involving child pornography, a physical condition can be present to an unusual degree that distinguishes the case from the typical cases covered by the guidelines. Mr. Pink has several extraordinary physical impairments as set out in USSG § 5H1.4 that support a downward departure and/or variance under the sentencing factors.

> 6. *The Need to Avoid Unwarranted Sentencing Disparities Among Defendants with Similar Records Who Have Been Found Guilty of Similar Conduct.*

A sentence of probation for Mr. Pink under all the factors set out herein - a defendant with a significant medical history and continuing needs, no prior criminal history, genuine acceptance of responsibility, and significant support from family and friends - would not cause a sentencing disparity among similarly situated defendants.

It is Mr. Pink's respectful position that the felony conviction alone sends a stern message and that a custody sentence would be unwarranted on this additional § 3553(a)

12

Case 4:16-cr-00265-BCW    Document 17    Filed 03/01/17    Page 12 of 14

factor. In addition to the felony, Mr. Pink was forced to resign as a teacher, a position he had held for 16 years. This loss of employment caused a significant loss of income and also raised his insurance premiums for coverage that he desperately needs. Mr. Pink voluntarily consented to custody of his beloved daughter being placed with her maternal grandmother. Mr. Pink voluntarily ceased all Boy Scout related activities in May 2014. During the summer of 2014, he began psychotherapy to understand why he was drawn to inappropriate subject matter, as well as to treat major depression and anxiety. Also, after finding employment at a major retail/grocery store, at a greatly reduced rate of pay, he was terminated upon this guilty plea, although he was not in contact with children. Mr. Pink has suffered significant collateral consequences because of his conduct.

## IV. CONCLUSION

Given the 18 U.S.C. § 3553(a) statutory sentencing factors and departure argument discussed herein, the proposed sentence of five years of probation, with general and special conditions as set out in the PSR at ¶70, would adequately reflect the seriousness of Mr. Pink's offense; promote respect for the law; and provide just punishment.

13

Respectfully submitted,

WYRSCH HOBBS & MIRAKIAN, P.C.

By: /s/ James R .Hobbs
James R. Hobbs          MO#29732
1200 Main, Suite 2110
Kansas City, Missouri 64105
jrhobbs@whmlaw.net
Tel:  (816) 221-0080
Fax:  (816) 221-3280
**ATTORNEY FOR DEFENDANT JASON PINK**

## CERTIFICATE OF SERVICE

The undersigned hereby certifies that on the 1st day of March, 2017, the foregoing was electronically filed with the Clerk of the Court using the CM/ECF system which sent notification of such filing to all counsel of record.

 s/ James R. Hobbs
*Attorney for Defendant Jason Pink*